## IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| ANDREW STEGEMEYER, by his Guardians, PERRY AND LUCIA STEGEMEYER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| -vs- | ) ) | Case No.  09-2201 |
| BARRY S. MARAM, Director, Illinois Department of Healthcare and Family Services, | ) ) ) ) | |
| Defendant. | ) ) | |

### ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES the Defendant, BARRY S. MARAM, Director of the Illinois Department of Healthcare and Family Services, by and through his attorney, Lisa Madigan, Attorney General for the State of Illinois, and for his Answer to Plaintiff's Complaint states as follows:

1.      Jurisdiction is conferred on this Court by 28 U.S.C. §1331.

**ANSWER:**    Defendant admits that this Court has jurisdiction of the claims in this action pursuant to 28 U.S.C. sec. 1331, but denies this Court has jurisdiction to enter the relief sought in the Prayer for Relief, subparagraphs  (b), (d), (e) and  (f).

2.      Venue is proper in this judicial district because Plaintiff resides in the Central District of Illinois, Urbana Division and the violations have taken place and continue to take place in the Central District of Illinois, Urbana Division.

**ANSWER:**    Defendant admits that venue is proper in the Central District of Illinois,

Urbana Division, but denies that any violations (undefined in this paragraph) have taken place or continue to take place.

3.    Plaintiff Andy Stegemeyer is a 20-year old male who resides with this parents and legal guardians, Perry and Lucia Stegemeyer, in Danville, Illinois.

**ANSWER:**    Defendant admits the allegations of paragraph 3 that as of the date of filing the complaint the Plaintiff was a 20-year-old male who resided with his parents, but Defendant  lacks knowledge or information sufficient to form a belief as to whether his parents are his legal guardians.

4.    Plaintiff was born on August 30, 1988, and will be 21 years old on August 30, 2009.

**ANSWER:**    Defendant admits the allegations of paragraph 4 of the Complaint.

5.    Plaintiff is Medicaid-eligible and currently receives Illinois Medicaid benefits.

**ANSWER:**    Defendant admits the allegations of paragraph 5 of the Complaint.

6.    Defendant Barry S. Maram is the Director of the Illinois Department of Healthcare and Family Services, the sole state Medicaid agency as required by federal law.

**ANSWER:**    Defendant admits the allegations of paragraph 6, with the correction that federal law requires there to be a "single" not "sole"state Medicaid agency.

7.    The Medicaid program is a joint federal and state funded program enacted to provide necessary medical assistance to needy persons who are elderly, or are disabled, and for families with dependent children, whose income and resources are insufficient to meet the cost of care.  42 U.S.C. § 1396.  States choosing to participate in the Medicaid program must operate the program in conformity with federal statutory and regulatory

-2-

requirements.  42 U.S.C. §1396n.

**ANSWER:**    Defendant admits that the allegations of paragraph 7 of the Complaint represent paraphrasing of the identified statutes.

8.    Each state participating in the Medicaid program must submit a Medicaid Plan to the Secretary of Health and Human Services ("HHS") for approval.  42 U.S.C. § 1396a.

**ANSWER:**    Defendant admits the allegations of paragraph 8 of the Complaint represent paraphrasing of the identified statute.

9.    Each State that participates in the Medicaid program must also designate a single state agency to administer and/or supervise the administration of that State's Medicaid Plan.  42 U.S.C. §1396a(a)(5).

**ANSWER:**    Defendant admits the allegations of paragraph 9 of the Complaint represent paraphrasing of the identified statute.

10.    In Illinois, HFS is the single agency responsible for administering the Medicaid program.

**ANSWER:**    Defendant admits the allegations in paragraph 10 of the Complaint.

11.    States have the option under Medicaid of providing home and community based services to persons who would otherwise require institutional care.  42 U.S.C. §1396n(c)(1).  Home and community based services are provided through HHS-approved "waiver" programs.  Under HHS' waiver authority, the Secretary of HHS may grant waivers with specified requirements, such as service limitations, that are otherwise applicable to the State's Medicaid Plan. 42 U.S.C. §1396n(c)(3). Waiver programs must be cost-neutral

in that the average cost of providing care for program participants in the home or community based setting must not exceed the estimated average cost of providing care in the institutional setting they would require.  42 U.S.C. § 1396n(c)(2)(D); 42 C.F.R. § 441.302(e).

**ANSWER:**    Defendant admits the allegations of paragraph 11 of the Complaint represent paraphrasing of the identified statutes and regulation.  Defendant denies the remaining allegations and conclusions of law of paragraph 11 of the Complaint.

12.    The Secretary of HHS has approved waivers in Illinois for Medically Fragile and Technology Dependent Children (the "MFTD Waiver") and the Home Services Program for adults with disabilities.

**ANSWER:**    Defendant admits that Illinois has an approved  waiver entitled "Medically Fragile/Technology Dependent Children" and an approved waiver entitled "Persons with Disabilities."

13.    Under the MFTD waiver, HFS pays for home-based care for children under the age of 21 who have exceptional medical needs.  HFS administers this waiver program with participation of the University of Illinois Division of Specialized Services for Children ("DSCC") under an agreement with HFS.

**ANSWER:**    Defendant admits that under the Medically Fragile/Technology Dependent Children's Waiver waiver HFS pays for medically necessary home-based care for children under the age of 21 based on the application of federal Early Periodic Screening, Diagnosis, and Treatment program mandated for all Medicaid-eligible children. Defendant admits the second sentence of paragraph 13 of the Complaint, except that it is

-4-

the Division of Specialized **Care** for Children, not "Services."

14.    Under the Home Services Program, HFS provides funds to adults with disabilities to enable them to remain in their homes or in a community setting.  HFS administers this waiver program with the participation of the Department of Rehabilitative Services ("DRS") of the Department of Human Services ("DHS") through an agreement with HFS.

**ANSWER:**    Defendant denies the first sentence of paragraph 14 of the Complaint. Defendant admits that the Persons with Disabilities waiver is administered with the participation of the Division of Rehabilitation Services of the Department of Human Services through an Agreement with HFS.

15.    In order to comply with the federal Rehabilitation Act of 1973, DHS has the authority and duty to operate its program of service to prevent unnecessary institutionalization of persons with disabilities.

**ANSWER:**    Defendant denies that it has a duty to create programs to prevent unnecessary institutionalization of persons with disabilities.  Defendant admits that paragraph 15 of the Complaint paraphrases the Rehabilitation Act.

16.    Andy currently receives Medicaid benefits, paid by Defendant, under a Medicaid Waiver program for children administered by DSCC pursuant to an inter-agency agreement with HFS.  Andy receives 114 hours of skilled nursing services per week, plus 336 hours of skilled nursing services per year for respite.  Andy has multiple disabilities requiring constant skilled care.  He has diagnoses of mitochondria myopathy, chronic respiratory failure, mental retardation, muscle weakness, global hypotonia, tracheostomy,

complex seizure disorder, severe kyphoscoliosis, and gastric reflux disease.

**ANSWER:**    Defendant admits the allegations of the first sentence of paragraph 16 of the Complaint as of the date of filing the complaint.  Defendant admits that Plaintiff, when participating in the Medically Fragile/Technology Dependent Children's Waiver, was approved for 114 hours of skilled nursing services per week and 336 hours of skilled nursing services per year for respite.  Defendant admits that Plaintiff has multiple disabilities as listed in the diagnoses in the fourth sentence, but Defendant lacks sufficient knowledge or information to admit or deny whether Plaintiff requires constant skilled care.

17.    Andy is dependent on others in all levels of functioning.  He needs total assistance with all of his daily living functions.

**ANSWER:**    Defendant admits the allegations of paragraph 17 of the Complaint.

18.    Andy is non-verbal although he has receptive language and can communicate to some extent with sign language and gestures to those familiar with his movements.

**ANSWER:**    Defendant admits that Plaintiff is non-verbal, but lacks sufficient knowledge or information to admit or deny the remaining allegations of paragraph 18 of the Complaint.

19.    Andy is on a gastrostomy tube for all of his nutrition.

**ANSWER:**    Defendant admits the allegations of paragraph 19 of the Complaint.

20.    Andy is totally dependent upon his tracheotomy ("trach") as his airway.  A mucous plug, which can occur at any time without warning, is instantly life threatening and requires immediate intervention.  Andy requires a trach change three times a week and as

-6-

needed to maintain his airway, and frequent emergency suctioning with scheduled suctioning a minimum of every four hours to decrease the frequency of mucous plugs.

**ANSWER:**    Defendant admits that Plaintiff is dependent upon his tracheotomy as his airway and that a mucous plug can be life threatening, but Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations of paragraph 20 of the Complaint.

21.    Andy is ventilator-dependent 24 hours per day and requires oxygen at all times.  When off the ventilator for brief periods, even with oxygen, he comes short of breath, his lips and arms become cyanotic, and he becomes very tired.

**ANSWER:**    Defendant admits that Plaintiff utilizes a ventilator and oxygen. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in paragraph 21 of the Complaint.

22.    Andy also has a low tolerance to heat, which causes his respirations and heart rate to go up.  Nurses must constantly monitor his tolerance level and intervene when necessary, using fans, blankets, and increased oxygen.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 22 of the Complaint.

23.    During the day, Andy has episodes of tachycardia requiring that his oxygen be increased.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 23 of the Complaint.

24.    Andy has severe scoliosis and is unable to tolerate being up in his wheelchair

for extended periods of time. He is at risk for blood blots and wears specialized hose to help minimize that risk. He must be repositioned frequently to prevent skin breakdown.

**ANSWER:**    Defendant admits that Plaintiff is repositioned frequently to prevent skin breakdown, but lacks sufficient knowledge to admit or deny the remaining allegations in paragraph 24 of the Complaint.

25.    Andy has a history of three respiratory arrests that required emergency 911 calls; two resulted in hospitalization. He has not been hospitalized since 2004 due to the outstanding monitoring he receives from his skilled and experienced nurses.

**ANSWER:**    Defendant admits the first sentence of paragraph 25 of the Complaint, but Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations of paragraph 25 of the Complaint.

26.    Andy's nurses know his medical condition very well and, when problems arise, are able to intervene quickly, preventing complications and hospitalizations. Andy's complex and ongoing medical needs require constant monitoring and assessment by skilled nurses. Because of Andy's medical fragility particularity as it relates to his respiratory condition, Andy requires around the clock services of a registered nurse or licensed practical nurse, or his trained parent. Absent the above-described level of services Andy would be at severe risk of medical complications, including death.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 26 of the Complaint.

27.    During those periods of time when skilled nursing staff are not present, all caregiving responsibilities fall upon Andy's parents.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 27 of the Complaint.

28.    Andy's father works full-time, 40-plus hours per week to support the family. He is also on call for additional hours, including one full night shift per week and one weekend shift per month.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 28 of the Complaint.

29.    Andy's mother is a trained caregiver, and is able to provide some care to Andy including suctioning and supervising medications, but she is on disability for a back problem, and is unable to lift Andy or to bend to any extent.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 29 of the Complaint.

30.    Andy is an integral member of his family and community.    He recently graduated from high school, and, accompanied by his nurse, he is able to volunteer watering plants at a local college.    He also enjoys music and other activities.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 30 of the Complaint.

31.    Currently, HFS provides a medical plan for Andy that is, and has been found by the State's medical doctor to be, a medically necessary and cost-effective alternative to care in the institutional setting that HFS has determined Andy would otherwise require.

**ANSWER:**    Defendant admits that as of the date the present action was filed, HFS was providing services to Plaintiff through the Medically Fragile/Technology Dependent

Children's Waiver and Early Periodic Screening Prevention and Treatment program, but denies the remaining allegations of paragraph 31 of the Complaint.

32.     To date, the institution that HFS has determined that Andy would need, based upon medical evaluation, is Riley's Children's Hospital.

**ANSWER:**     Defendant denies the allegation in paragraph 32 of the Complaint.

33.     In its last required review, in 2007, HFS through its agent, DSCC, determined that the monthly cost for Andy's "institutional care" would be $42,971.46.

**ANSWER:**     Defendant admits the allegations of paragraph 33 of the Complaint.

34.     In the 2007 review, HFS determined that the cost of the home nursing services, that Andy needed, was $16,688 per month, plus $952 for respite, for a total of $17,619.

**ANSWER:**     Defendant admits that in the 2007 review that the hours of home nursing services approved by HFS had an estimated cost of $16,667 per month, plus $952 for respite, for a total of $17,619 per month.

35.     In its 2007 review, HFS determined that the state realized a potential savings of $21,386 per month by serving Andy in his home.

**ANSWER:**     Defendant admits that in the 2007 review that DSCC calculated the difference between the cost of in-home services and the cost of "institutional care" resulting in a difference of $21,386 per month.

36.     Andy currently receives approved skilled nursing services of 114 hours per week, plus 336 hours per year for respite, at a cost of approximately $17,619.  Andy's parents provide the balance of Andy's care.

**ANSWER:** Defendant admits that Plaintiff, when participating in the Medically Fragile/Technology Dependent Children's Waiver, was approved for 114 hours of skilled nursing services per week and 336 hours of skilled nursing services per year for respite at a cost of approximately $17,619 per month. Defendant lacks knowledge or information sufficient to form a belief as to the remaining allegations of paragraph 36 of the Complaint.

37.     As of May 2009, a physician employed or retained by HFS had determined, after a full medical evaluation, that the level of services Andy currently receives was "medically necessary."

**ANSWER:** Defendant denies the allegations of paragraph 37 of the Complaint.

38.     Andy has not been medically evaluated by HFS or an agency of HFS since May 2009.

**ANSWER:** Defendant admits the allegations of paragraph 38 of the Complaint.

39.     Andy's condition has not changed since May 2009, and is not expected to change in the future, other than to become worse.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 39 of the Complaint.

40.     Andy's current level of services is based upon a determination made by DSCC, after a full medical evaluation of Andy, that he needed that level of care to avoid institutionalization.

**ANSWER:** Defendant denies the allegations of paragraph 40 of the Complaint.

41.     As Andy approached his 21st birthday, DSCC staff advised Andy's parents that DSCC administered benefits would cease on his 21st birthday as he would "age out"

of the MFTD waiver, and that he would be transitioned into the Home Services Program Persons with Disabilities ("PWD") Waiver administered by DHS under an inter-agency agreement with HFS.

**ANSWER:**    Defendant admits the allegations of paragraph 41 of the Complaint.

42.    DHS staff met with Andy's parents to discuss a plan for Andy after he turned 21. The staff who met with Andy's parents regarding his post-age 21 care did not include a physician, nor did they evaluate Andy's condition and medical needs as a part of the transition or planning process for the PWD waiver services.

**ANSWER:**    Defendant admits that DHS staff met with Plaintiff's parents to discuss a plan for Andy after he turned 21 and that the staff who met with Plaintiff's parents regarding his post-age 21 care did not include a physician. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations in paragraph 42 of the Complaint.

43.    DHS staff advised Andy's parents that a plan of care had to be developed with a cost that would not exceed a ceiling imposed by HFS of $8400 per month, which is less than half of the cost of benefits Andy currently receives.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 43 of the Complaint.

44.    DHS has proposed a plan for Andy's medical care in his home, effective on his 21st birthday, for vastly reduced nursing services, and substituted unskilled services, for a total cost of $8,344 per month.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny

the allegations of paragraph 44 of the Complaint.

45.   The limit on the cost of services under the new plan did not follow a new individualized assessment of Andy's medical needs.   Rather, the "plan of care" was developed in reverse.   HFS imposed upon DHS a dollar limit for Andy's care that represented the highest amount that HFS would pay for Andy's care in the community, regardless of actual need.   Non-medical staff thereafter composed a plan that would fit within that budget.

**ANSWER:**   Defendant denies that the "plan of care" was developed in reverse with HFS imposing upon DHS a dollar limit for Plaintiff's care that represented the highest amount that HFS would pay for care in the community, regardless of actual need. Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations in paragraph 45 of the Complaint.

46.   The amount set by HFS for Andy's care was determined by reference to the estimated cost of long-term care in a nursing facility, which cost was set as the "cap" or limit on the amount that could be paid for Andy's care.

**ANSWER:**   Defendant admits that Plaintiff's care in the community through the Persons with Disabilities Waiver must be equal to or less than the estimated cots of long-term care in a nursing facility.   Defendant denies the remaining allegations in paragraph 46 of the Complaint.

47.   The rate set by HFS for Andy, which it intends to impose on August 30, 2009, is not sufficient to meet the costs of the nursing services that the state itself has determined that Andy requires as a matter of medical necessity, and places Andy at

significant risk of institutionalization.

**ANSWER:**   Defendant denies the allegations of paragraph 47 of the Complaint.

48.   Andy's parents are not able to increase the level of care that they currently provide to Andy, due to work demands and physical limitations.

**ANSWER:**   Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 48 of the Complaint.

49.   The reduction in services by HFS is based solely on the fact that Andy will reach 21 years of age on August 30, 2009.  The reduction in funding is not due to a change in Andy's medical needs, which in fact have remained unchanged.

**ANSWER:**   Defendant denies that a reduction in services is based solely on Plaintiff's 21st birthday.  Defendant lacks sufficient knowledge or information to admit or deny the remaining allegations of paragraph 49.

50.   Andy's strong bond to his family and community is threatened by isolation in an institution.  He has benefitted greatly from the love and support of his family, and his health has remained stable living with them at home.

**ANSWER:**   Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 50 of the Complaint.

51.   Andy desires to remain in the community, living at his parent's home.

**ANSWER:**   Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 51 of the Complaint.

52.   Andy's physicians have determined that Andy can be cared for at home safely and appropriately, and the state has determined that Andy is appropriately served

in the community, as he is currently served.

**ANSWER:**    Defendant admits that Plaintiff's physicians did provide information to HFS regarding the appropriateness of Plaintiff being cared for in the community when the Plaintiff participated in the Medically Fragile/Technology Dependent Children's Waiver, and the state approved a certain number of hours of skilled nursing care pursuant to federal Early Periodic Screening, Diagnosis, and Treatment program to allow Plaintiff to be cared for in the community.  Plaintiff is currently served under a temporary restraining order entered by the Court.  Defendant denies the state has determined that Plaintiff's current services are appropriate.

53.    Under the federal and state laws governing the Home Services program, HFS has discretion to set funding for services for persons whose needs cannot be met by otherwise applicable caps, provided that the program is cost-neutral.

**ANSWER:**    Defendant denies the allegations in paragraph 53 of the Complaint.

54.     The federal Centers for Medicaid and Medicare ("CMS") permits the selection (in the waiver application) of a hospital level of care, a nursing facility level of care, or both, as the comparator or comparators for determining the cost-neutrality of services provided under the waiver.

**ANSWER:**    Defendant admits that the federal Centers for Medicare and Medicaid Services    (CMS) waiver form allows the State to select the comparable services to determine the cost neutrality of a waiver.

55.    With no modification in its regulations, and little modification in its policies and/or practices (e.g., permitting the hospital comparator in addition to the nursing facility

comparator for cost assessment) HFS could continue to fund the level of nursing care that Andy requires in order to remain at home, at a cost that is less than would be required to serve him in an institutional setting for the care he needs.

**ANSWER:** Defendant denies the allegations in paragraph 55 of the Complaint.

56. The proposed reduction in funding for Andy's medical care will ultimately force Andy into an institutional setting, isolating him from home and community, or alternatively will result in his death.

**ANSWER:** Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 56.

57. Although not required to do so, HFS has elected to continue to limit the PWD Waiver program, to which HFS has assigned Andy, to services that do not exceed a nursing facility level of care. Defendant has refused to amend or modify the PWD home services waiver to permit a hospital level of care to be used as the institutional comparator in appropriate situations, such as Andy's.

**ANSWER:** Defendant admits that HFS has continued to select nursing home services as the comparable cost for determining cost neutrality of the Persons with Disabilities waiver. Defendant denies that HFS has "assigned" Plaintiff to the Persons with Disabilities waiver. Defendant admits that HFS has refused to amend or modify the Persons with Disabilities waiver to select the cost of hospital services as the comparable cost for determining cost neutrality of the Persons with Disabilities waiver. Defendant denies the remaining allegations of paragraph 57 of the Complaint.

58. Unnecessary segregation of persons with disabilities is a violation of the

-16-

integration mandate of the Americans with Disabilities Act as recognized by the Supreme

Court in *Olmstead v. L.C.*, 537 U.S. 581 (1999).

**ANSWER:**    Defendant admits that the United States Supreme Court issued a

decision in *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999), but denies that the legal

conclusion states in paragraph 59 of the Complaint is true in all circumstances.

59.    In *Radaszewski v. Maram*, the United States Court of Appeals for the

Seventh circuit held that the State's reduction in services to an individual aging out of the

MFTD program, to a level insufficient to meet his medical needs, violates the integration

mandate where the individual desires services in the community, the appropriate

institutional level of care is a hospital, and the cost of hospitalization is less than the cost

of the home services.  383 F.3d 599 (7th Cir 2004).

**ANSWER:**    Defendant admits that the United States Court of Appeals for the

Seventh Circuit  issued a decision in *Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004),

but denies the remaining allegations of paragraph 59 of the Complaint.

60.    In several other "aging-out" cases following the Seventh Circuit's decision in

*Radaszewski*, including *Radaszewski* itself on remand, federal courts have entered

injunctions requiring Defendant Maram to pay for medically necessary services at levels

higher than the cost of a nursing facility level of care, despite the waiver's stated limitation

of "nursing facility-only" for use as the cost comparator for Medicaid's cost-neutrality

requirements.  The courts have recognized that Medicaid does not require the nursing

facility limitation that HFS has included in its waiver, and that amending it to include a

hospital level of care to avoid an *Olmstead* violation would not be difficult or a fundamental

change.  These cases include *Sidell v. Maram*, 05 CV 1001 (C.D. Ill.)(January 14, 2009) (deciding in favor of plaintiff and requiring state to provide current level of in-home skilled nursing care under adult waiver program after plaintiff turns 21); *Grooms v. Maram*, 563 F.Supp.2d 840 (N.D. Ill. 2008)(finding plaintiff "aging out" of home care waiver and facing institutionalization was protected by the integration mandate and state Medicaid agency must reasonably accommodate" his request for continued home care; final injunction entered by agreement); *Fisher v. Maram*, 2006 WL 2505833 (N.D. Ill.) (Opinion and order injunction entered by agreement); *Fisher v. Maram*, 2006 WL 2505833 (N.D.Ill.) (Opinion and order entering a temporary restraining order requiring state to continue to provide current level of home nursing services to individual with multiple complex disabilities even after she reaches age of 21).

**ANSWER:**   Defendant admits that federal courts have entered injunctions requiring Defendant  to continue to pay for services at the same level of services as the Plaintiffs were receiving under the Medically Fragile/Technology Dependent Children's Waiver. Defendant denies the remaining allegations in paragraph 60 of the Complaint.

61.    The current Home and Community Based Services Waiver for Persons with Disabilities expires on September 30, 2009.

**ANSWER:**    Defendant admits that the Persons with Disabilities waiver that was in effect when this lawsuit was filed expired on September 30, 2009.

62.    On or about June 30, 2009, Defendant submitted to CMS its application for a five-year renewal of the Home and Community Based Services Waiver for Persons with Disabilities.  The renewed waiver would be effective from October 1, 2009 through

September 30, 2014.

**ANSWER:**    Defendant admits that on or about June 30, 2009, HFS submitted to CMS its application for a five-year renewal of the Home and Community Based Services Waiver for Persons with Disabilities.  Defendant admits that the application has been approved and the Persons with Disabilities waiver is effective from October 1, 2009 through September 20, 2014.

63.    Despite the rulings of several courts upholding a hospital level of care as the required comparator for assessment of medically complex individuals previously served under the MFTD waiver, defendant's pending waiver application to CMS continues its previous policy of electing the nursing facility-only limitation.

**ANSWER:**    Defendant admits that the Persons with Disabilities waiver application filed on or about June 30, 2009 (and subsequently approved by CMS) selected nursing home care as the comparable institutional cost for determining cost neutrality of the Persons with Disabilities waiver.  Defendant denies the remaining allegations in paragraph 63 of the Complaint.

64.    Defendant's failure to amend the waiver, and its failure to select a hospital as one of the comparators in its pending PWD waiver application, has resulted and will continue to result in DHS and HFS staff refusals to even consider adopting plans of care that meet the needs of recipients such as Plaintiff, placing recipients in the position fo having to forgo benefits to which they are lawfully entitled, or to file a federal lawsuit in each and every case in order to maintain a safe level of services.

**ANSWER:**    Defendant denies the allegations of paragraph 64 of the Complaint.

65.    Defendant's application may be revised prior to October 1, 2009.

**ANSWER:**    Defendant admits the waiver application could have been revised prior to October 1, 2009.

66.    Absent a revision, the renewed five-year waiver will contain the nursing facility-only restriction, which disparately impacts individuals with disabilities such as Plaintiff, i.e. those with complex medical needs requiring up to 24-hour nursing or parental care, with no lawful compelling justification.

**ANSWER:**    Defendant admits that the renewed five-year waiver contains nursing home care as the comparable institutional cost for determining cost neutrality of the PWD waiver, but denies the remaining allegations in paragraph 63 of the Complaint.

67.    Title II of the Americans with Disabilities Act, 42 U.S.C. §12132, prohibits public entities from discriminating against persons with disabilities in the delivery of services.  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), prohibits recipients of federal funds from discriminating against qualified individuals with disabilities. Policies and practices that result in unjustifiable segregation of persons with disabilities in institutions constitute prohibited discrimination under both Acts.

**ANSWER:**    Defendant admits the allegations of paragraph 67 of the Complaint represent paraphrasing of the identified statutes.   Defendant denies that the legal conclusion contained in paragraph 67 of the Complaint is true is all circumstances.

68.    Under 28 C.F.R. §35.130(d), implementing Title II of the ADA, public entities must administer services in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  This same requirement applies to recipients of federal

funds under the regulations implementing the Rehabilitation Act.  28 C.F.R. §41.51(d).

**ANSWER:**    Defendant admits the allegations of paragraph 68 represent paraphrasing of the identified regulation.

69.    HFS is a public entity within the meaning of Title II of the ADA and is a recipient of federal funds under the Rehabilitation Act.

**ANSWER:**    Defendant admits the allegations of paragraph 69 of the Complaint.

70.    Andy is a qualified individual with a disability within the meaning of Title II of the ADA and under Section 504 of the Rehabilitation Act.

**ANSWER:**    Defendant lacks sufficient knowledge or information to admit or deny the allegations of paragraph 70 of the Complaint.

71.    The actions by HFS in refusing to approve the level of services Andy needs, and in persisting to require that the PWD waiver be limited to a level of services that courts have repeatedly held threaten institutionalization, constitute unlawful discrimination under 42 U.S.C. §12132 and 29 U.S.C. §794(a) and violate the integration mandate of the regulations implementing these statutory prohibitions.  28 C.F.R. §35.130(d); 45.51(d).

**ANSWER:**    Defendant denies the allegations of paragraph 71 of the Complaint.

72.    Unless enjoined, Defendant's actions will cause Andy irreparable injury for which there is no adequate remedy of law.

**ANSWER:**    Defendant denies the allegations of paragraph 72 of the Complaint.

73.    Defendant's planned reduced funding of the home nursing and other services, which Andy needs in order to avoid institutionalization, violates Title II of the ADA, 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a)

and their implementing regulations, 28 C.F.R. §35.130(d); 41.51(d).

**ANSWER:**    Defendant denies the allegations of paragraph 73 of the Complaint.

74.    Defendant's policy of refusing to identify a "hospital" as one of the cost-neutrality comparators for determining PWD Medicaid waiver benefits, as set forth in its pending application for a five-year renewal of the Home Services Program PWD waiver, violates title Ii of the ADA, 42 U.S.C. §12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and their implementing regulations, 28 C.F.R. §35.130(d); 41.51(d).

**ANSWER:**    Defendant denies the allegations of paragraph 74 of the Complaint.

## AFFIRMATIVE DEFENSES

1.    Some or all of Plaintiff's requested relief is barred by the Eleventh Amendment.

2.    Neither the regulations implementing the ADA nor the Rehabilitation Act create Congressionally authorized enforceable rights.

3.    The relief sought by Plaintiff would fundamentally alter the nature of the State's Medicaid program.

4.    The relief sought cannot be reasonably accommodated taking into account the resources available to the State and Defendant's responsibility for funding the care and treatment of a large and diverse population of persons with disabilities.

WHEREFORE, Defendant Barry S. Maram respectfully requests this honorable Court enter judgment in his favor and against Plaintiff.

Respectfully submitted,

BARRY S. MARAM, Director, Illinois Department of Healthcare and Family Services,

Defendant,

LISA MADIGAN, Attorney General of the State of Illinois,

Attorney for Defendant.

Sarah R. Kerley, #6283449
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Telephone: (217) 785-4555
Facsimile:  (217) 524-5091
skerley@atg.state.il.us

Of counsel.

By:   s/Sarah R. Kerley
          Sarah R. Kerley
          Assistant Attorney General

**Stegemeyer v. Maram**
**USDC CDIL 09-2201**

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2009, I presented the foregoing **Answer and Affirmative Defenses** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

Karen I. Ward
karen@equipforequality.org

and I hereby certify that on November 4, 2009, I have mailed by United States Postal Service, the document to the following non-registered participant: None.

Respectfully submitted,

 /s/Sarah R. Kerley
Sarah R. Kerley, #62783449
Assistant Attorney General
Office of the Attorney General
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 785-4555
Facsimile:  (217) 524-5091
skerley@atg.state.il.us